**Tagged for publication**



## ORDERED in the Southern District of Florida on April 08, 2011.

**John K. Olson, Judge**
**United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
#### Fort Lauderdale Division
#### www.flsb.uscourts.gov

**In re**:

      **Moon Thai & Japanese, Inc.,** *et al.,*

             Debtors.

_____/

Case No. 10-23328-BKC-JKO

Chapter 11 (*Jointly Administered*)

### Order Restricting Practice by Brown, Van Horn, P.A., and Its Attorneys in the United States Bankruptcy Courts, Directing Notification to Clients, Directing Return of Certain Fees, and Directing the Clerk of this Court to Take Certain Actions

I entered an Order to Show Cause [ECF No. 358] which directed David Marshall Brown, Chad T. Van Horn, and their law firm, Brown, Van Horn, P.A., to appear on March 22, 2011, and show cause why they should not be suspended from the practice of law in this Court. I continued that show cause hearing to April 1, 2011, *see* ECF No. 377, and directed the law firm to employ one skilled Chapter 13 practitioner and one skilled Chapter 11 practitioner with impeccable reputations to study the firm's Chapter 13 and Chapter 11 practices, make recommendations, and report to me when they had completed their analysis. The two lawyers retained by Brown, Van Horn, John D.

Bristol (as to Chapter 13 matters) and Frank P. Terzo (as to Chapter 11 matters) gave preliminary findings at the April 1st hearing.

The Order to Show Cause was precipitated by what appeared to be incompetent and wrongful conduct by the lawyers in the firm in this and in other cases filed under Chapter 11 and Chapter 13.

### Moon Thai & Japanese, Inc., *et al.*

Among other cases,[1] I was gravely concerned about the following issues in this jointly administered Chapter 11 case (the "Moon Thai Cases"):

- Brown, Van Horn filed a Chapter 13 petition for Somkid Punma, Case No. 10-22328-LMI on May 5, 2010. Mr. Punma is the president and sole shareholder of the Debtors in the Moon Thai Cases, which were filed on May 14, 2010, some nine days after Mr. Punma's case was filed. In their disclosures filed here, Brown, Van Horn failed to disclose their representation of Mr. Punma. In addition to his equity interests in the Moon Thai Debtors, Mr. Punma has wage claims against the Debtors. These facts mean that Brown, Van Horn represented interests adverse to the Debtors' estates and that the firm was not disinterested within the meaning of 11 U.S.C. § 327(a). Accordingly, the firm could not properly represent the Debtors here.[2]

---

[1]Additional cases and the concerns which I have about them were discussed at length in the hearings of March 22nd and April 1st. Those additional matters form part of the basis for the findings and conclusions which I reach herein.

[2]The problems surrounding the conflict issues are more fully discussed in an Order to Show Cause [ECF No. 168] entered August 11, 2010. The Order to Show Cause was heard August 12, 2010, and resulted in the imposition of a sanction which required both Mr. Brown and Mr. Van Horn to submit 10,000 word essays on disinterestedness and cash collateral (discussed below), as well as the disgorgement by Brown, Van Horn of some $10,000 in fees. Upon delivery of those essays, the Order to Show Cause was discharged [ECF No. 197, August 31, 2010]. Alas, Mr. Brown and Mr. Van Horn appear to have learned nothing from their

- Even more troubling, Brown, Van Horn and its lawyers ***did not know*** that they were already representing Mr. Punma when they filed the Moon Thai Cases.  Although I was assured by Brown, Van Horn at the hearing on April 1, 2011, that the firm has a conflict system which has long been in place, the firm provided no evidence that the conflict system actually exists, that it had been checked, that a check would have revealed the conflicting representation, or that the firm actually checks for conflicts in any of its cases.  I was told merely that the conflict check had "fallen between the cracks."  No elaboration on how this was possible was offered by Brown, Van Horn.

- On July 16, 2010, creditor PNC Bank, N.A., filed a motion [ECF No. 120] to prohibit the use of cash collateral by any of the Debtors and sought sanctions against them.  This eventually triggered a motion [ECF No. 130] from Brown, Van Horn seeking authority for the Debtors to use cash collateral.  This motion was filed July 28, 2010, more than a month and a half after the Moon Thai Cases were filed, and some two weeks after the PNC motion was filed.  The Debtors had been using cash in the interim.  Of course, the use of cash collateral without consent of the secured creditor or order of court is strictly prohibited by 11 U.S.C. § 363(c)(2).  It ultimately developed that PNC Bank had a security interest in cash collateral of only one of the Debtors (which ended up in Chapter 7), and no prohibited use of cash collateral had actually been made by the Debtors.  Shockingly, however, and as reflected in their motion to use cash collateral [ECF No. 130], the Brown, Van Horn lawyers ***did not***

---

homework assignments, and they apparently cannot be embarrassed or shamed.  In order to protect the Debtors' financial interests, I ultimately allowed the firm to represent these Debtors upon their withdrawal from the conflicting representation of Mr. Punma.

***know*** whether PNC Bank held a security interest in cash collateral.  I was presented with no evidence at any time that Brown, Van Horn had done any due diligence, even of the most minimal sort (such as checking UCC filings), let alone reading loan documents or doing the other tasks which competent Chapter 11 counsel uniformly undertake before filing a case.  The motion to use cash collateral [ECF No. 130] blithely assumed that PNC did indeed have a perfected security interest in cash collateral, acknowledged that the Debtors had been using it, and provided a short recitation about why it would be a good thing for the Debtors to use cash collateral in the Moon Thai Cases.

• At the hearing on April 1, 2011, the Brown, Van Horn lawyers advised me that they had "for a couple of months" used a lien search program from Lexis-Nexis called "Accurate".  They were, however, unable to explain whether they had done any lien searches with respect to the Moon Thai Debtors, either before or after filing the cases.  They were unable to explain their protocols for lien searches.

### Jennifer J. Vest

Brown, Van Horn filed a Chapter 11 petition for Jennifer J. Vest, Case No. 10-41229-JKO on October 13, 2010.  The firm filed its application [ECF No. 15] to be retained to represent the Debtor in Possession on November 19, 2010.  The application discloses, among other things, that Ms. Vest is a friend of Mr. Van Horn and others at the law firm because she has, since December 2007, been dating Mr. Brown; that she and Mr. Brown have "shared a residence" since May 2009; and that she has been employed by Brown, Van Horn as a part time IT Consultant and Project Manager.  The application and the affidavits of Mr. Brown and Mr. Van Horn appear to be models

of full disclosure and I commended Mr. Van Horn for their completeness at the hearing on the application.

Because the close personal and professional relationships between Ms. Vest and the firm create an apparent lack of disinterestedness, I set the application for hearing on December 7, 2010. At the hearing, I pointed out to Mr. Van Horn that because (a) all of the post-petition income of an individual Chapter 11 Debtor is property of the Chapter 11 estate; (b) the individual Chapter 11 Debtor's attorney represents the estate, and ***not*** the individual person; (c) the attorney necessarily owes fiduciary duties to the estate and its creditors; and (d) there is an inherent conflict between the best interests of the estate and the best interests of the individual person, the close personal and professional relationships between Ms. Vest and the firm meant that the firm could not be disinterested as required by 11 U.S.C. § 327(a).  I accordingly denied the firm's application to represent Ms. Vest and asked Mr. Van Horn to prepare an order denying it.  He promptly did so and the order [ECF No. 22] was entered December 10, 2010.

Ms. Vest thereafter appeared to be proceeding *pro se*.  At the hearing on April 1, 2011, I learned for the first time that Brown, Van Horn had been ghostwriting all of Ms. Vest's pleadings filed after December 10th as ostensibly *pro se* pleadings.  These pleadings included Ms. Vest's bankruptcy schedules and statement of financial affairs; her monthly operating reports as a Chapter 11 debtor; and applications to retain other professionals, including an appraiser and accountant.  Six of these pleadings were filed subsequent to the show cause hearing on March 22, 2011.  All of these pleadings were uploaded by the Brown, Van Horn firm into the Court's CM/ECF system, and none of them contain a Brown, Van Horn attorney signature block.

That a lawyer whose Chapter 11 retention application was denied for lack of disinterestedness would continue to represent the Chapter 11 estate is shocking. Even more shocking, **both Mr. Brown and Mr. Van Horn told me at the April 1st hearing that what they had done was perfectly acceptable.** Their expressed view was that so long as they weren't being paid for their representation, they could represent the Chapter 11 estate – even though their application had been denied because I found that they were incapable of objectively representing the bankruptcy estate in light of the personal relationship with Ms. Vest. It is now perfectly clear that Mr. Brown and Mr. Van Horn have no scintilla of understanding of what lawyers can and cannot do in bankruptcy cases notwithstanding the severe (and, one would have thought, painful and embarrassing) sanctions imposed upon them last summer in the Moon Thai Cases.

### Chapter 13 cases

In addition to issues in its Chapter 11 practice exemplified, in part, by the Moon Thai Cases and the Vest case, the Brown, Van Horn firm has an extensive Chapter 13 practice. In January 2011 alone it filed 53 Chapter 13 cases, and although it has cut back on filings since then, it is unclear whether the cutback was the result of any internal recognition that the firm was drowning in work or the result of increasing criticism of the firm's work product by me, by my colleagues on the bench, and by the Standing Chapter 13 Trustee, Robin Weiner.

### Marie F. Fleurant

A single case exemplifies my general observations and conclusions regarding the gross incompetence of the Brown, Van Horn firm in its Chapter 13 practice. On March 29, 2011, I covered a hearing for my colleague Judge Raymond B. Ray on the Debtor's Emergency Motion to

Extend the Automatic Stay in the Chapter 13 case of Marie F. Fleurant, Case No. 11-15591-RBR. In preparing for that hearing, I discovered the following:

- Mr. Brown of Brown, Van Horn had filed a prior case for Ms. Fleurant, Case No. 10-26076-JKO, on June 8, 2010. That case was ultimately dismissed on the motion of the Standing Chapter 13 Trustee for the Debtor's failure to appear at the statutory meeting of creditors under 11 U.S.C. § 341 and her failure to make pre-confirmation Chapter 13 plan payments.

- Ms. Fleurant's new case was filed March 1, 2011. The petition in that case, filed under penalty of perjury and signed by Brown, Van Horn lawyer Hollie F. Kirsner, fails to disclose the 2010 bankruptcy case and affirmatively alleges, in response to the question asking whether the Debtor had filed any bankruptcy cases in the last 8 years, that she had filed "NONE." It is inexcusable and shocking that a law firm which filed a case for a debtor nine months before had no records of its prior representation, failed to consult such records if it had them, and even failed to look on the Court's CM/ECF system to check the name "Marie F. Fleurant." Of course, searching that name on CM/ECF immediately identifies the 2010 case.[3]

- Under 11 U.S.C. § 362(c)(3), the automatic stay of creditor actions goes into effect in a case where a debtor had a previous case dismissed within the year before the new bankruptcy filing – but that stay is in effect for only 30 days. Accordingly, it is standard practice in such cases for a motion to extend the automatic stay to be

---

[3]A CM/ECF search also discloses an earlier Chapter 13 case filed by Ms. Fleurant, Case No. 02-51056-RBR, filed outside the 8 year disclosure requirement.

filed. Good practice suggests that the motion to extend be filed immediately upon the new bankruptcy filing so that the automatic stay remains in effect and so that a hearing can be set in an orderly and non-emergency basis.

• Ms. Kirsner did not file a § 362(c)(3) motion upon the filing of the new case. Instead, she waited until 7 days before the stay would evaporate before doing so, thereby creating the "emergency" which required me to act in Judge Ray's absence. Surprisingly, even this emergency motion does not disclose or identify Ms. Fleurant's prior case, although the fact that the motion was filed establishes that Brown, Van Horn knew of the 2010 filing.

• Apparently in an effort to explain why the delay occurred, Ms. Kirsner alleges the following in the emergency motion:

  1. Debtor filed this Voluntary Petition for relief under Chapter 13, Title 11, of the United States Code, on March 1, 2011;

  2. At the time of filing Debtor could not make Plan Payments;

  3. Debtor is currently making regular income and able to make Plan Payments;

  4. Debtor believes that her financial circumstances have improved to a point that she believes that he [sic] is now able to reorganize under a Chapter 13 Bankruptcy;

• Because I was curious about these representations, I reviewed documents filed in both of Ms. Fleurant's cases. They revealed the following:

  • Ms. Fleurant had been employed in a Publix Supermarket deli when she filed her earlier case on June 8, 2010, and had as of that date accrued 64 hours of sick pay.

-8-

- Ms. Fleurant was employed in the same Publix Supermarket deli when she filed her new case on March 1, 2011, and had as of that date accrued 112 hours of sick pay, suggestive of continuous employment in the Publix deli since some months prior to June 2010.

- After I extensively questioned Ms. Kirsner on March 29th, she ultimately acknowledged that Ms. Fleurant had indeed been continuously employed by Publix since at least June 2010. I gave Ms. Kirsner every possible opportunity to explain her firm's written representations that Ms. Fleurant "could not make Plan Payments" on March 1, 2011, but that she "is currently making regular income and able to make Plan Payments" and that "her financial circumstances have improved to a point" that she could now fund a Chapter 13 Plan. These statements are incomprehensible in light of the fact that Ms. Fleurant had been continuously employed by the same employer, at the same job, and at roughly the same pay, for at least the preceding nine months. Ms. Kirsner was unable to give me any explanation. I note in particular that Mr. Brown was present in the courtroom during all, or substantially all, of the hearing on the motion to extend the automatic stay and offered no assistance to Ms. Kirsner or insight into the matter. I conclude that the Brown, Van Horn firm's written representations were intentionally misleading and false.

- Ms. Kirsner is a young lawyer, admitted to practice in April 2009 after graduating from Nova Southeastern University, Shepard Broad Law Center. She has heretofore been the Brown, Van Horn firm's Chapter 13 lawyer at all of the firm's hearings before this Court. She either lacks substantive knowledge of Chapter 13 concepts

or is unable to communicate that knowledge in the courtroom. It has appeared to me for some time that she is often sent to court with very little knowledge of the Brown, Van Horn Chapter 13 cases which are on for hearing, and she often appears both unprepared and uninformed. That the Brown, Van Horn firm sends her to court in that condition speaks volumes about their practice; that she willingly goes to court in that condition speaks volumes about her.

- I had raised concerns about the quality of the Brown, Van Horn Chapter 13 practice as early as August 2010, when I raised the subject with the firm at the August 12th Moon Thai cash collateral hearings discussed above. I particularly expressed concern that Elias Leonard Dsouza was employed by the Brown, Van Horn firm and was *de facto* supervising Ms. Kirsner. Mr. Dsouza is a disgraced lawyer who had once run an extensive Chapter 13 practice in this district. He was suspended from practice in this Court by an agreed order [ECF No. 92] entered in the case of Mashama Spence, Case No. 09-22763-RBR. The events giving rise to Mr. Dsouza suspension involved the blatant falsification of appraisals in Chapter 13 cases.[4] Why The Florida Bar has not acted to suspend or disbar Mr. Dsouza is mysterious and frustrating to the judges of this Court.

---

[4]Mr. Brown emphasized at the hearing on April 1st that Mr. Dsouza had not himself falsified the appraisals; apparently someone employed by him did so and Mr. Dsouza merely filed the false documents. I fail to discern the difference.

- After his suspension, Mr. Dsouza became a "Senior Attorney" at Brown, Van Horn. According to the Brown, Van Horn website,[5] Mr. Dsouza clerked for Mr. Brown while in law school, had been an associate in Mr. Brown's firm from 1999 to 2003, and regards Mr. Brown as his mentor. Although ostensibly not engaged in bankruptcy practice since rejoining Mr. Brown after his suspension from practice in this district, pleadings and other documents filed by the Brown, Van Horn firm *after* Mr. Dsouza rejoined the firm in 2009 looked identical (according to Standing Chapter 13 Trustee Robin Weiner and based on my own observations) to those filed by Mr. Dsouza when he ran his own firm from 2003-2009. The post-Dsouza Chapter 13 pleadings filed by Brown, Van Horn exhibit the same idiosyncracies and deficiencies that plagued Mr. Dsouza's pleadings filed by his own former firm. Although Mr. Brown represented to me that Mr. Dsouza had not supervised his firm's Chapter 13 practice beginning in 2009 and continuing thereafter, I find Mr. Brown's representation in that regard to be intentionally and deliberately false. At the show cause hearing held in the Moon Thai Cases last August, Mr. Brown represented to me on the record that Mr. Dsouza was employed by Brown, Van Horn as a "paralegal." Mr. Dsouza was apparently fired by Brown, Van Horn after the show cause hearing on March 22, 2011; Mr. Brown stated that Mr. Dsouza's last day at Brown, Van Horn was April 1, 2011. As of that date and continuing through the date of this Order, Mr. Dsouza appears on the Brown, Van Horn website as "Senior

---

[5]Searched April 8, 2011, a full week after the April 1st date which Mr. Brown represented to me was Mr. Dsouza's last day working for Brown, Van Horn.

Attorney."  Although I had raised with Mr. Brown and Mr. Van Horn substantial issues regarding Mr. Dsouza's role in their firm as early as August 2010, Brown, Van Horn only took action to terminate his employment after the specter of the firm's suspension from practice loomed large.  In other words, Mr. Brown and Mr. Van Horn would willingly sacrifice Mr. Dsouza to save their own skins, but no consideration was given by them to the propriety of employing a disbarred lawyer as "Paralegal" (as represented to me last August) or as "Senior Attorney" (as advertised on the Brown, Van Horn website) and letting him *de facto* run the firm's Chapter 13 practice – the very practice from which he had been disbarred.

### Brown, Van Horn Chapter 13 practice

John D. Bristol was asked by Brown, Van Horn following the March 22nd hearing to undertake a review of the firm's Chapter 13 practice and to report his preliminary findings to me at the April 1st hearing.  In doing so, I find that Mr. Bristol is acting as an advisor to the Court, albeit one paid by Brown, Van Horn, and is in no way acting as Brown, Van Horn's counsel.[6]  I further find that in that capacity, Mr. Bristol is entitled to the benefit of the *Barton* doctrine,[7] and specifically that no action or proceeding may be brought against him by any person in any forum arising out of or in connection with his actions or advice in this case without the prior consent of this Court.[8]

---

[6]No outside counsel represented Brown, Van Horn at the hearings on March 22nd and April 1st, and Mr. Brown, Mr. Van Horn, and Ms. Kirsner acted *pro se* on their own and the firm's behalf.

[7]*Barton v. Barbour,* 104 U.S.126 (1881).

[8]Frank P. Terzo, whose Chapter 11 report is discussed below, is acting in the same capacity as advisor to the Court and is the beneficiary of these same protections.

Mr. Bristol is a skilled and experienced Chapter 13 practitioner who is well suited to advise me on the Brown, Van Horn Chapter 13 practice as contemplated by the Order to Show Cause [ECF No. 377].

Mr. Bristol spent a half day, and his senior Chapter 13 paralegal spent a full day, meeting with the Brown, Van Horn firm. As a result of those meetings and reviews, Mr. Bristol prepared a preliminary report containing recommended changes to the Brown, Van Horn Chapter 13 practice which would enhance the ability of Brown, Van Horn to represent debtors competently. That report was presented to me at the April 1st hearing and will be separately docketed in this case.

Mr. Bristol found the following in his report:

- Too many attorneys in the firm are responsible for each Chapter 13 case; that is, Mr. Brown, Mr. Van Horn, Ms. Kirsner, and Mr. Dsouza "are each involved in the administration of a single case," giving rise to an "'I thought you took care of that' mentality."

- The firm "has recently taken on more work than they can immediately handle," including filing some 52 Chapter 13 cases in January 2011 – "more cases than could be properly handled."

- The firm's staff "does not properly obtain required documents prior to the filing of a bankruptcy case" and "there is not a clear delineation of duties of support staff."

In addition to his written findings, Mr. Bristol characterized the Brown, Van Horn firm's major problems in its Chapter 13 practice as "volume and follow-up." The firm does not pay timely attention to the Standing Chapter 13 Trustee's "objection sheet," which Trustee Weiner timely provides in every Chapter 13 case in the Fort Lauderdale and West Palm Beach Divisions of this

Court. That deficiency advice is provided at or before the meeting of creditors under 11 U.S.C. §

341, and alerts each Chapter 13 attorney to the substantive and procedural problems with each case.[9]

Mr. Bristol characterizes the Chapter 13 Trustee's objection sheet as "The Bible" for a Chapter 13

practice in this district. Bible or road map, the Trustee's objection sheet clearly sets forth what

needs to be done in each Chapter 13 case. Mr. Bristol's finding that Brown, Van Horn ignores the

objection sheets (or, perhaps, pays attention to them on an untimely basis) is validated by the very

high percentage of Brown, Van Horn Chapter 13 cases which take far too long to bring to

confirmation and which lead to an inordinate number of problems requiring contested hearings.[10]

     Mr. Bristol advised me at the hearing that he believed that a significant portion of the firm's

administrative problems in handling Chapter 13 cases stems from its marketing strategy. Brown,

Van Horn apparently seeks prospective clients by sending solicitation letters to homeowners whose

properties are scheduled for imminent state court foreclosure sales. Mr. Bristol said that he had

trolled for clients by this method when he was a young lawyer but had long since abandoned the

---

    [9]By timely providing this advice, the Trustee gives every Chapter 13 attorney a clear road map to confirmation of each Chapter 13 case. Attorneys successfully practicing in this Division follow the road map. Unfortunately, some ignore it – to the detriment of their clients.

    [10]Those unfamiliar with Chapter 13 practice in a busy court like this one would be shocked by the volume involved. On my first day sitting as a bankruptcy judge in February 2006, I confronted an 87 page Chapter 13 calendar, with 5 or 6 cases per page. The volume has significantly increased since then. The vast majority of Chapter 13 matters are handled on a consent basis; if the Chapter 13 Plan complies with the provisions of the Bankruptcy Code, the Chapter 13 Trustee will recommend confirmation and the Court will be presented with an agreed confirmation order. Similarly, the vast majority of motions are resolved on a consensual basis and the Court will again be presented with agreed orders. When Chapter 13 plans are not confirmable, or when motions are contested, the issues will be presented to and decided by the Court. Brown, Van Horn cases are disproportionately unconfirmable and consume a disproportionate amount of Court time because the Brown, Van Horn firm has not prepared them properly.

practice because the cases obtained from such clients were inherently chaotic (and accordingly unprofitable).  In his written recommendations, and strongly reiterated at the April 1st hearing, Mr. Bristol counseled that "[a] Bankruptcy case should never be filed before the debtor's tax returns, bank statements, paycheck stubs and 401(k) retirement plan documents are received in the law office."  Insisting that such documents be obtained before filing may well mean that the case cannot be filed before the scheduled foreclosure sale, but failing to obtain them inevitably leads to deficient and inaccurate filings and to administrative chaos in the law firm.  That chaos predictably leads to unsatisfactory proceedings in the Court.  When I suggested to Mr. Bristol at the hearing that the essential financial documents may **never** be forthcoming from such clients, he vigorously agreed.[11]

When Mr. Bristol visited the Brown, Van Horn firm on March 29, 2011, he was advised that Mr. Van Horn would be responsible for the firm's entire Chapter 13 practice; that Mr. Van Horn would sign each petition, appear at each § 341 meeting of creditors, and appear at each confirmation hearing.  He was told by the firm that Mr. Dsouza would have no involvement in any Chapter 13 cases, and he strongly recommended that change.  He further found that Mr. Dsouza's "participation

---

[11]Our court receives many "bare bones" bankruptcy petitions which fail to attach the debtor's bankruptcy schedules and statement of financial affairs and which are otherwise incomplete.  The Bankruptcy Code and Rules contemplate incomplete filings; emergencies of a real sort do exist and are provided for by statute and rules.  However, the deficiencies in a startlingly high percentage of those incomplete filings are never corrected and the cases are administratively dismissed.  Many cases are filed with the sole purpose of delaying a foreclosure sale and, once that objective is obtained, the debtor simply ignores his or her statutory obligations to provide complete financial information.  Such debtors do receive the benefit of the automatic stay against creditor actions, albeit briefly, but receive none of the other benefits of a bankruptcy filing, including most importantly a fresh start, but debtors who proceed in this manner are manifestly not future oriented.

-15-

in each case allows confusion as to which attorney is responsible for specific matters in each case."[12] He was also told that Ms. Kirsner would, and he recommended that, she "make no court appearances for the firm."

It was accordingly shocking to Mr. Bristol, and disconcerting to me, that Brown, Van Horn told me at the April 1st hearing that **Mr. Brown,** not Mr. Van Horn, would be handling the entirety of the firm's Chapter 13 practice.  I was also told that Mr. Dsouza was leaving the firm on April 1st[13] and that Ms. Kirsner would become Mr. Brown's assistant in handling Chapter 13 matters.  The firm offered no explanation why the roles of Mr. Van Horn and Mr. Brown had changed 180 degrees between Tuesday, March 29th and Friday, April 1st.  I conclude, in part based on this remarkable switch, but in larger part based upon the whole approach that the Brown, Van Horn firm has taken in connection with these matters, that the firm has no plan for how to organize itself, handle cases, or address any other legal or business problem.  Brown, Van Horn simply operates on a completely *ad hoc* basis.  It "solves" any problem which presents itself with a short-term fix designed to address whatever squeaks the loudest with no consideration for the long-term consequences – and little if any concern as to whether its representations to the court have any basis in fact.

---

[12]I note here that Mr. Bristol's findings that Mr. Dsouza had heretofore been involved in each Brown, Van Horn Chapter 13 case is consistent with Trustee Weiner's conclusion that Mr. Dsouza was the person actually in charge of the Brown, Van Horn Chapter 13 practice, and with my own observations that the chronic deficiencies in the Brown, Van Horn Chapter 13 pleadings and practices after Mr. Dsouza joined the firm in 2009 perfectly matched the chronic deficiencies in Mr. Dsouza's own prior practice.  These findings likewise bolster my conclusion that Mr. Brown's representations to me made at the Moon Thai show cause hearing in August 2010 that Mr. Dsouza was a "Paralegal" and that he was not *de facto* running the Brown, Van Horn Chapter 13 practice were deliberately false.

[13]Although he is still listed as "Senior Attorney" on the firm's website.

Mr. Bristol made a number of other recommendations of an administrative nature in his written report and at the April 1st hearing.  These include:

- making a single paralegal responsible for obtaining all tax returns, bank statements, paycheck stubs and related support documents prior to filing the case;

- making a second paralegal the primary contact person for communications with the client, including with respect to preparation of schedules and the Chapter 13 plan, coordination for § 341 meetings of creditors and confirmation hearings, and the preparation of various notices required by the administrative issues in a Chapter 13 case;

- making a third paralegal responsible for attorney support in contested matters, including the preparation of supporting documentation and hearing notices;

- cessation of the firm's practice of having support staff babysit the client while the client reviews the pre-filing education class required by 11 U.S.C. § 109(h).

Each of these recommendations make sense, and that many of them are necessary suggests that Brown, Van Horn's administrative structure is incoherent and duplicative – consistent with my conclusion that Brown, Van Horn handles matters on an *ad hoc* basis.  Mr. Brown told me at the April 1st hearing that the firm has some 30 employees.  I am left with the impression of a law firm whose employees struggle mightily to produce work product using a Rube Goldberg operating model: a complex machine employed to perform a simple task.  Machines designed by Rube Goldberg at least appeared to work.  The Brown, Van Horn version doesn't.

Mr. Bristol was satisfied that Brown, Van Horn knows the law applicable to Chapter 13 cases.  He reached that conclusion based upon Mr. Brown years of practice and his experience as

a law clerk to Judge Ray and as an attorney for the United States Trustee.  Unfortunately, Mr. Brown

is in this regard like Peter Sellers as Chance the gardener (or Chauncey Gardiner) in *Being There:*

what appears to be reality is simply illusion based upon erroneous assumptions.  Whatever Mr.

Brown might have been exposed to as a law clerk or as an attorney for the United States Trustee has

not translated into knowledge or skill as a bankruptcy practitioner.  Whether this is a result of

incapacity, some other impairment, or mere laziness is a moot point; Mr. Brown is an ineffectual

bankruptcy lawyer who enjoys the respect of neither the bench nor the Clerk's office.[14]

### Brown, Van Horn Chapter 11 Practice

Frank P. Terzo was asked by Brown, Van Horn following the March 22nd hearing to

undertake a review of the firm's Chapter 11 practice and to report his preliminary findings to me at

the April 1st hearing.  In doing so, I find that Mr. Terzo is acting as an advisor to the Court, albeit

one paid by Brown, Van Horn, and is in no way acting as Brown, Van Horn's counsel.  I further find

that in that capacity, Mr. Terzo is entitled to the benefit of the *Barton* doctrine,[15] and specifically that

no action or proceeding may be brought against him by any person in any forum arising out of or

in connection with his actions or advice in this case without the prior consent of this Court.[16]

Mr. Terzo is a skilled and experienced Chapter 11 practitioner who enjoys an impeccable

reputation in this district.  He is a partner in GrayRobinson, P.A., is head of that firm's substantial

---

[14]Brown, Van Horn Chapter 11 cases are known as "DMB Specials" in the Clerk's office. It is not a term of respect.

[15]*Barton v. Barbour,* 104 U.S.126 (1881).

[16]John D. Bristol, whose Chapter 13 report is discussed above, is acting in the same capacity as advisor to the Court and is the beneficiary of these same protections.

bankruptcy practice, and is well suited to advise me on the Brown, Van Horn Chapter 11 practice as contemplated by the Order to Show Cause [ECF No. 377].

Mr. Terzo met for two hours with the Brown, Van Horn firm on March 29, 2011, almost all of it spent with Mr. Van Horn, and approximately 10 or 15 minutes with Mr. Brown.

Mr. Terzo noted in his oral report to me, delivered by telephone connection while he was out of town, that the firm's organizational structure was more like the organizational chart of a big law firm than that of a two partner firm. The firm employs too many staff members, many of whom engage in tasks which are unproductive. For example, initial interviews with prospective individual Chapter 11 debtors are conducted by staff members who lack substantial knowledge of the particular and peculiar Bankruptcy Code provisions now applicable to such debtors as a result of the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). These include, among many others, homestead lookback provisions of 730 days,[17] 1215 days,[18] and ten years.[19] The firm employs only one paralegal with substantive bankruptcy knowledge or training and she is not the initial contact person with prospective debtors. Mr. Terzo's recommendation regarding staffing is that Brown, Van Horn needs less secretarial staff and substantially more "quality paralegals."

Brown, Van Horn employs a calendaring program which picks up all of the firm's matters which are noticed on the Court's CM/ECF system, but the firm does not appear to have any formal system for picking up other calendar events, including, for example, hearings continued in open

---

[17]11 U.S.C. § 522(b)(3)

[18]11 U.S.C. § 522(p)

[19]11 U.S.C. § 522(o)

court which are not formally noticed for the continued hearing.  Mr. Terzo observed that the firm does not appear to have a formal tickler system which alerts lawyers and support staff of looming deadlines until the deadline actually arrives, thereby creating additional emergency work.

Mr. Terzo observed that Mr. Van Horn seems to have far too many areas of responsibility. He is the firm's managing partner and is in charge of human relations, billing, payroll, and marketing – all in addition to practicing law.  When I asked Mr. Brown what he did in the law firm, he recited a long list of law practice tasks which he performed, but no administrative tasks for which he was primarily responsible.  When I pursued the issue further, Mr. Brown defensively asserted that he did a lot of administrative work, too, but he did not specify any administrative tasks for which he is primarily responsible.

The heavy reliance on Mr. Van Horn is highly questionable.  Mr. Van Horn – the firm's managing partner – graduated from Nova Southeastern University, Shepard Broad Law Center and was admitted to The Florida Bar in April 2009.  Brown, Van Horn has advised me that Mr. Van Horn will hereafter be primarily responsible for the firm's Chapter 11 practice.  I have sincere doubts that any lawyer who has been practicing for two years is capable of handling a Chapter 11 practice.  As Mr. Terzo pointed out at the April 1st hearing, a huge amount of prepetition work is essential before any Chapter 11 case should be filed: not just UCC searches but review of loan documents, pledge agreements, tax returns, financial statements, cash flow analyses, etc.  Brown, Van Horn tends to take a significant percentage of its Chapter 11 cases with retainers of $10,000 or less.  As Mr. Terzo stated at the hearing, that size retainer can easily be consumed just in reviewing loan documents before filing a case.  It is my distinct impression that the firm's Chapter 11 filings

-20-

have generally not been preceded by what Mr. Terzo and I[20] consider the essential preparatory work. As a result, troublesome issues suddenly appear in cases, often as a surprise to Brown, Van Horn.

In partial response to the Order to Show Cause [ECF No. 358], Brown, Van Horn advised [ECF No. 367] that it had recently retained as a management consultant Dr. Michael R. Mullen, a Professor of Marketing & International Business at Florida Atlantic University.  Dr. Mullen's *curriculum vitae* indicates that he is an entrepreneur in the telecommunications industry and that his academic focus is in marketing.  Although Dr. Mullen may well be able to assist the firm in implementing organizational structural changes, Mr. Terzo's view is that Brown, Van Horn really needs an experienced bankruptcy lawyer to give it organizational advice.  I concur, and further believe that Brown, Van Horn appears to need less marketing advice and more advice on how to choose which cases to take and how to manage the cases it does take.

Mr. Van Horn acknowledged that the firm had taken on almost every case that walked in the door without undertaking qualitative analysis.  He further stated that the firm was trying to be more discriminatory in case underwriting and that the firm acknowledged that it simply had too much work to do.

Both the Standing Chapter 13 Trustee and the United States Trustee expressed great concerns about the firm's workload: Brown, Van Horn has more work than it can handle.  While acknowledging that internal administrative issues exist at Brown, Van Horn, the United States Trustee is "more concerned with their legal competence."  Heidi A. Feinman and Damaris Rosich-Schwartz, the attorneys who represented the United States Trustee at the hearing, advised me that

---

[20]I was a Chapter 11 practitioner for almost 30 years preceding my appointment to the bench.

in addition to the cash collateral problems in the Moon Thai Cases, Brown, Van Horn had significant cash collateral problems in at least four or five individual debtor Chapter 11 cases pending before Judge Ray. The firm's disclosure of related parties in cases other than the Moon Thai Cases has been grossly inadequate. In addition, the attorneys for the United States Trustee advised me that orders are routinely uploaded by Brown, Van Horn in Chapter 11 cases without giving prior notice to or soliciting comments from the United States Trustee, including orders dealing with issues (such as cash collateral) on which the United States Trustee has significant interest. The United States Trustee is rightly concerned that Mr. Van Horn is not professionally competent at this stage in his career to handle the Chapter 11 cases for which he is responsible. I have a further concern that both he and Mr. Brown have a disconcerting habit of attempting to finesse past legal issues with what could charitably be characterized as salesmanship. I expect complete candor from bankruptcy practitioners, and I don't get it from Brown, Van Horn.

Brown, Van Horn desperately needs mentorship in both its Chapter 11 and Chapter 13 practices. Where mentors will come from is highly problematic. As Ms. Feinman observed, those lawyers who would make good mentors are all busy in this economic environment, and if willing mentors can be found, they will be expensive – expense that Brown, Van Horn will find it problematic if not impossible to afford.

I have significant questions about the firm's financial condition. When Ms. Feinman asked whether Brown, Van Horn's Chapter 11 retainers are placed in trust until fee awards are entered (as is the normal and expected practice in our Court), Mr. Brown replied that all retainers are immediately taken into income and placed in the firm's operating account because Brown, Van Horn's engagement letter provides that all retainers are earned when paid. "Earned when paid"

retainers may be permitted in some circumstances under Florida law,[21] but the status of retainers in bankruptcy cases is governed by 11 U.S.C. § 329(a), which requires that all amounts paid in connection with or in contemplation of a bankruptcy filing must be disclosed and, if the court determines the amount to be unreasonable in the circumstances, the excessive amount must be disgorged under § 329(b). Since the bankruptcy court controls determinations of reasonableness and disgorgement, an agreement by the debtor that a retainer is "earned when paid" and nonrefundable is voidable if not void.

Bankruptcy courts have expressed a variety of nuanced views on whether purportedly nonrefundable retainers are ever appropriate in bankruptcy cases. My own view is that a prepaid nonrefundable retainer is inherently unreasonable in bankruptcy. *See, e.g., In re Bressman,* 214 B.R. 131 (Bankr. D. N.J. 1997); *In re NBI, Inc.,* 129 B.R. 212 (Bankr. D. Colo. 1991). Other courts require a case-by-case analysis. *In re Keller Financial Services of Florida, Inc.,* 248 B.R. 859 (Bankr. M.D. Fla. 2000); *In re Heritage Mall Associates,* 184 B.R. 128 (Bankr. D. Ore. 1995). Regardless of the substantive analysis, it is beyond argument that ***a retainer claimed to be earned when paid must be disclosed as such*** in the law firm's disclosures under 11 U.S.C. § 327 and Bankruptcy Rule 2014. At the very least, a retainer assertedly earned when paid is part of the "arrangement for compensation" within the meaning of Rule 2014(a). More importantly, because such retainers are inherently suspect, they are abnormal and failure to disclose them may result in disallowance of fees and disgorgement.

---

[21]Opinion 93-2, Committee on Professional Ethics of The Florida Bar, Oct. 1, 1993, 1993 WL 761327; Rule 4-1.05(a) of The Rules Regulating The Florida Bar.

### Further observations

I became increasingly concerned about the competence and candor of the Brown, Van Horn firm during the past year.  The firm took on more work than it could competently handle and explanations for deficiencies have been increasingly incredible.  I was nevertheless shocked by some of the revelations made by Mr. Bristol and Mr. Terzo regarding the firm's administrative and substantive problems.  Although their reviews were based upon very brief visits to the firm, the information which they obtained and reported to me was far worse than I had suspected.

Insofar as the issue of competence is concerned, Mr. Brown gratuitously volunteered that he, Mr. Van Horn, and Ms. Kirsner would demonstrate that they are competent by taking and passing the American Board of Certification examinations[22] in both Business Bankruptcy and Consumer Bankruptcy.  The ABC examinations are comprehensive and well-regarded in the bankruptcy legal community and are recognized by The Florida Bar.  Although I would not have ordered that these three attorneys take and pass these examinations in order to demonstrate their competence to practice, I will accept Mr. Brown's representation that they will do so.

As a result of the April 1st hearing, I seriously considered prohibiting Mr. Brown, Mr. Van Horn, and Ms. Kirsner from any practice in the United States Bankruptcy Court for the Southern District of Florida in any pending or future cases.  At the strong request of the Standing Chapter 13 Trustee and the United States Trustee, however, that I give Brown, Van Horn "one last shot at

---

[22]Examinations scheduled for 2011 are to be given on June 9 (Traverse City, MI), July 21 (Newport, RI), July 27 (Kiawah Island, SC), August 3 (Anaheim, CA), August 4 (Hershey, PA), September 8 (Las Vegas, NV), October 12 (Tampa, FL), October 28 (Colorado Springs, CO), November 10 (New York, NY), and December 1, 2011 (La Quinta, CA).  *See* www.abcworld.org

redemption," I will limit that sanction.  Mr. Bristol, Mr. Terzo, and both Mr. Brown and Mr. Van Horn expressed the view that Brown, Van Horn had taken on too much work.  I will accordingly give the firm an opportunity to clear up their backlog by prohibiting Mr. Brown, Mr. Van Horn, Ms. Kirsner, and the Brown, Van Horn firm from filing any new cases under any chapter of the Bankruptcy Code in any Bankruptcy Court pending further order of court.  At the strong request of Ms. Weiner and Ms. Feinman, I will order Brown, Van Horn to notify in writing each prospective bankruptcy debtor client of the firm that the firm is currently suspended from filing new cases and direct the return of all retainers received by the firm for such representation.

I will also order Mr. Brown, Mr. Van Horn, and Ms. Kirsner to take 30 hours of basic and intermediate level continuing legal education classes in consumer bankruptcy and 30 hours of basic and intermediate level continuing legal education classes in business bankruptcy.  Ms. Weiner strongly recommends that the three lawyers join and attend the annual meetings of both the National Association of Chapter Thirteen Trustees ("NACTT") and the National Association of Consumer Bankruptcy Attorneys ("NACBA").  I strongly recommend to Mr. Brown, Mr Van Horn and Ms. Kirsner that they do so, but I will not order them to do so.  However, in considering any application by any of these lawyers to be readmitted to file new bankruptcy cases, I will take into account the nature, quality, and relevance of the continuing legal education courses which they have taken.  I will, of course, also take into account what changes in the firm's administrative procedures have been implemented.

Based upon all of the foregoing, it is **ORDERED** that:

1.      David Marshall Brown, Chad T. Van Horn, and Hollie F. Kirsner, and all other Brown, Van Horn attorneys who were employed by the firm on April 1, 2011, are hereby **prohibited**

from filing any debtor cases under any Chapter of the Bankruptcy Code in any Bankruptcy Court in the United States, effective immediately, pending further order of this Court.

2.     David Marshall Brown, Chad T. Van Horn, and Hollie F. Kirsner are hereby **directed** to advise each prospective debtor client of the firm whose case has not been filed (collectively, "New Debtor Clients"), in writing, within seven days of the entry of this Order, that each of them has been **suspended** from the filing of bankruptcy cases on behalf of such New Debtor Client, and to return to each such New Debtor Client all retainer or other consideration received by Brown, Van Horn, P.A., whether before or after entry of this Order.  Copies of each such letter so advising each New Debtor Clients are to be retained by Brown, Van Horn, P.A., and provided to the Consumer Bankruptcy Reviewing Attorney and the Business Bankruptcy Reviewing Attorney (described below) together with written certification under penalty of perjury from Mr. Brown and Mr. Van Horn that each New Debtor Client has received such letter.

3.     Brown, Van Horn is **directed** to retain at its expense a Consumer Bankruptcy Reviewing Attorney and a Business Bankruptcy Reviewing Attorney to undertake and complete a review of the operating procedures of Brown, Van Horn and to report to the Court in connection with any application by Mr. Brown, Mr. Van Horn, or Ms. Kirsner to be readmitted to file new cases in any Bankruptcy Court.  John D. Bristol and Frank P. Terzo would be logical and acceptable choices as Consumer Bankruptcy Reviewing Attorney and Business Bankruptcy Reviewing Attorney, respectively.  I am not directing Brown, Van Horn to engage Mr. Bristol or Mr. Terzo and nothing in this Order requires either Mr. Bristol of Mr. Terzo to undertake the engagement.

4.     David Marshall Brown, Chad T. Van Horn, and Hollie F. Kirsner are each hereby **directed** to take 30 hours of basic and intermediate level continuing legal education classes in

-26-

consumer bankruptcy and 30 hours of basic and intermediate level continuing legal education classes in business bankruptcy before they apply to be readmitted to file new cases in any Bankruptcy Court.

5.      Brown, Van Horn is **directed** to obtain a subscription to Keith Lundin's treatise on Chapter 13 law and practice and to maintain such subscription pending further order of this Court.

6.      David Marshall Brown, Chad T. Van Horn, and Hollie F. Kirsner may each apply to be readmitted to file new cases in any Bankruptcy Court after demonstrating to this Court's satisfaction that they are competent to practice bankruptcy law.  Such competence may be demonstrated by taking and passing the American Board of Certification examinations in business bankruptcy law and consumer bankruptcy law.

7.      The Clerk of this Court is hereby **directed** to advise the Court of any attempt by David Marshall Brown, Chad T. Van Horn, or Hollie F. Kirsner to file any new debtor cases under any Chapter of the Bankruptcy Code.

8.      Any person seeking relief from or modification of this Order may do so (a) upon a showing of changed circumstances from those which existed as of April 1, 2011, and (b) by written motion served on, *inter alia,* Ms. Weiner, Ms. Feinman, and Ms. Rosich-Schwarz.

# # #

<u>Copies to:</u>     *The Clerk of Court is directed to provide copies of this Order to the Brown, Van Horn firm and all interested parties registered to receive notice.*

<u>Additional copies to:</u>

Adria E. Quintela, Chief Branch Discipline Counsel
The Florida Bar
Lake Shore Plaza II
1300 Concord Terrace Suite 130
Sunrise, FL 33323

-27-

The Honorable Paul G. Hyman (West Palm Beach Office) *Chief Judge*

The Honorable A. Jay Cristol (Miami Office)

The Honorable Laurel M. Isicoff (Miami Office)

The Honorable Erik P. Kimball (West Palm Beach Office)

The Honorable Robert A. Mark (Miami Office)

The Honorable Raymond B. Ray (Fort Lauderdale Office)

Katherine Gould Feldman (Miami Office) *Clerk of Court*

Joe Falzone (Miami Office) *Chief Deputy Clerk*

Chris LaCoursiere (Fort Lauderdale Office) *Deputy in Charge*

Cameron Cradic (West Palm Beach Office) *Deputy in Charge*